GENTRY COUNTY DRAINAGE DISTRICT, APPELLANT, v. FARMERS AND MECHANICS BANK, RESPONDENT.*

Kansas City Court of Appeals. April 30, 1928.

*Corpus Juris-Cyc References: Assignments, 5CJ, section 81, p. 917, n. 48; Banks and Banking, 7CJ, section 747, p. 751, n. 75.

*J. W. McKnight, E. C. Lockwood* and *Ed Kelso* for appellant.

*W. W. Reeves* for respondent.

ARNOLD, J.—This is a proceeding to have declared preferred a claim of $1014.43, part of the proceeds of taxes collected in behalf of the plaintiff Drainage District, and deposited in the Farmers & Mechanics Bank of Stanberry, Missouri.

It appears plaintiff is a legally organized drainage district in Gentry county, Missouri, and defendant bank was a corporation engaged in general banking business in Stanberry in said county. On January 12, 1925, Grace Ross, collector of Cooper township in said county, delivered to E. C. Lockwood, treasurer of the drainage district, her check for $1014.43, payable to the Drainage District, against her deposit in the Farmers & Mechanics Bank, representing taxes received by her as collector. The said check was indorsed in the name of the district by Lockwood as treasurer. The Commercial Bank of Stanberry, Missouri, and the Platte Valley Bank at Ravenwood, Missouri, were the designated depositories for the Drainage District funds.

On January 13, 1925, Lockwood presented said check to the Farmers & Mechanics Bank for payment, whereupon he was informed by the assistant cashier thereof that if he wanted cash all that could be done would be to give him a draft. Lockwood accepted a draft in

the amount of the check drawn upon the First National Bank at
St. Louis, Missouri, stating that he desired to send the money to
the Platte Valley Bank at Ravenwood, and this he afterwards did.
Payment was refused and the draft protested by the First National
Bank of St. Louis for the reason that the Farmers & Mechanics
Bank of Stanberry had closed its doors at the close of business on Jan-
uary 13, 1925, and had been placed in the hands of the state com-
missioner of finance, Charles L. Mosley, deputy, for the purpose of
liquidation. The claim was duly presented to said deputy for allow-
ance.

The matter was taken into the circuit court where it was sought
to have it allowed as a preferred claim. It was admitted at the trial
that at the time the bank failed it had cash and sight exchange on
hand amounting to $15,000; and that it also had to its credit in the
First National Bank of St. Louis a sum sufficient to pay the draft in
question. The cause was submitted to the trial court on September
30, 1926, and a decision was rendered disallowing the claim as pre-
ferred. Motions for a new trial and in arrest were overruled and
plaintiff perfected its appeal. Thereafter and during the same term
plaintiff withdrew its affidavit for appeal, the order allowing appeal
was set aside by agreement of parties, plaintiff's motion for a new
trial was sustained and the cause continued to the March term, 1927.
On May 16, 1927, the cause was submitted to the court on the evi-
dence adduced at the former trial and an agreed statement of facts,
together with certain newly-discovered evidence sought to be intro-
duced by plaintiff. The said agreed statement of facts is as follows:

"It is agreed that the Gentry County Drainage District is a pub-
lic corporation, organized and existing under and by virtue of the
laws of the State of Missouri; that the Farmers & Mechanics Bank
is a banking corporation, organized and existing under and by vir-
tue of the laws of the State of Missouri, and located at the city of
Stanberry in the State of Missouri; that the Farmers & Mechanics
Bank failed on the 13th day of January, 1925, and was taken charge
of by the state finance commissioner and is now liquidated by special
deputy, Charles Mosely; it is agreed that at the time said Farmers &
Mechanics Bank failed, it had assets that were taken over by the
finance commissioners in substantially the following amounts, cash
and sight exchange about $15,000, the agreement being that there is
sufficient funds now in the hands of the commissioner, and were at
the time he took charge of the bank to pay this claim should it be
declared to have a preference. It is agreed that at the time the bank
failed, that the condition of the bank was such that it would not pay
to exceed fifty cents on the dollar on its liabilities. It is agreed that
E. C. Lockwood is the secretary-treasurer of the Gentry County
Drainage District, and was such secretary-treasurer on the 13th day

of January, 1925. It is agreed that Grace Ross was the township collector of Cooper township on the 13th day of January, 1925.''

The court gain rendered judgment denying plaintiff the right of priority of payment. Motions for a new trial and in arrest were overruled and plaintiff has appealed.

It is urged the court erred in the following respects: (1) In holding that to entitle plaintiff to a preference the bank must be shown to have been insolvent at the time of the purchase of the draft and that its officers and agents had knowledge thereof. (2) In holding the purchase of the draft was not an equitable assignment of the funds in the St. Louis bank, and that the matter was not to be determined as though the Farmers & Mechanics Bank was solvent. (3) In holding that the relationship of principal and agent did not exist between the plaintiff and the Farmers & Merchants Bank, and that the relationship was that of debtor and creditor. (4) In holding there was no evidence that the bank was insolvent. (5) In finding there was no evidence that the officers knew the bank was insolvent. (6) Because under the agreed statement of facts and the evidence adduced, the burden shifted to the defendant to show lack of knowledge on the part of the officers of the failing condition of the bank. (7) Because the court erred in holding the burden of proof was on the claimant to show such knowledge on the part of the officers of the bank. (8) In excluding the testimony of I. F. Broderick and plaintiff's exhibits A1 to A6 inclusive. (9) In holding the sale of the draft was not a representation that the bank was solvent, and was not a fraud upon plaintiff. These assignments may be considered as being merged into one general assignment, to-wit: That the court erred in refusing to rule the claim one for preference over general claims against the Farmers & Mechanics Bank; and they will be so treated in this opinion.

It is urged in support of the appeal (1) that the relationship of principal and agent existed between the Farmers & Mechanics Bank and the Drainage District, and (2) that there was an equitable assignment of the funds of the Farmers & Mechanics Bank in the hands of the First National Bank of St. Louis sufficient to pay the draft. It is argued that when the Farmers & Mechanics Bank received the check of Grace Ross and gave its draft drawn on the First National Bank of St. Louis therefor, it constituted itself the agent for the holder of the check for the purpose of its collection; that the issuance of the draft was an equitable assignment of sufficient funds in the hands of the First National Bank of St. Louis to pay the draft when presented; that the assets of the Farmers & Mechanics Bank were augmented by the transaction because the check was charged to the account of Grace Ross, collector; that the bank thereby reduced its liability to said collector in the amount of $1014.43.

In support of this position plaintiff cites the case of Bank of Poplar Bluff v. Millspaugh, 275 S. W. 579, 581, a case decided by the Springfield Court of Appeals wherein the opinion in the case of Federal Reserve Bank v. Peters, 139 Va. 45, 123 S. W. 379, is quoted with approval as follows:

"It appears from the record that as soon as the draft was sent to the Federal Reserve Bank of Richmond the cashier of the Prince Edward-Lunenburg County Bank deducted the amount thereof from the apparent balance due from the Bank of Commerce & Trusts upon which the draft was drawn, just as if this amount had already been withdrawn from the latter bank and transferred to the Federal Reserve Bank of Richmond. By this act the cashier intended to set apart such a portion of the balance in the Bank of Commerce & Trusts as was necessary to meet the draft sent to the Federal Reserve Bank of Richmond, as he was obligated to do under his contract. Equity regards that as done which ought to have been done. Under such circumstances the draft on the Bank of Commerce & Trusts was an equitable assignment of the funds to the Federal Reserve Bank of Richmond, and we will so adjudge."

We agree with plaintiff in this position and find it in line with the rule announced in Federal Reserve Bank v. Millspaugh, 275 S. W. 583, also an opinion by the Springfield Court of Appeals, and Federal Reserve Bank v. Quigley, 284 S. W. 164, an opinion by this court. The facts in the former case may be stated as follows: The Federal Reserve Bank of St. Louis forwarded to the Bank of Oran its cash letter containing items drawn on or payable at the Bank of Oran, indorsed for collection and remittance. The Federal Reserve Bank was not a depository of the Bank of Oran. On receipt of the items the Bank of Oran charged them to the respective drawers' accounts in its bank and on the same day made a draft on its correspondent the First National Bank of St. Louis, for the amount of these items and forwarded such draft to the Federal Reserve Bank. The draft was presented for payment which was refused for the reason that the Bank of Oran had closed its doors. It was admitted the Bank of Oran had sufficient cash in its vaults and deposits with the First National Bank of St. Louis subject to check to pay the draft. The court held on the authority of the Poplar Bluff Bank v. Millspaugh, 275 S. W. 579, that the plaintiff was entitled to a preference. In the Quigley case the Federal Reserve Bank of St. Louis mailed to the Bank of Syracuse its cash letter containing items drawn on, or payable at, the Bank of Syracuse for collection. The Federal Reserve Bank was not a depository of the Bank of Syracuse. The Bank of Syracuse charged the items in the cash letter to the respective drawers' accounts in said Bank of Syracuse and drew its draft on its correspondent the Citizens National Bank of Sedalia,

payable to the order of the Federal Reserve Bank of St. Louis for the amount of the items, and forwarded the draft to the Federal Reserve Bank of St. Louis. At the time the items were collected by the Bank of Syracuse it had in its vaults and with its correspondents sufficient funds to pay the draft. The First National Bank of St. Louis duly presented the draft for payment to the drawee bank and payment was refused because the Bank of Syracuse had closed and was in the hands of the commissioner of finance. The court held that the Federal Reserve Bank of St. Louis was entitled to a preference.

We find no distinction between the facts of the cases just cited and the one at bar, and we hold the ruling in those cases to be controlling here and in line with the holding of the Supreme Court in Bank v. Millspaugh, 281 S. W. 733, in which the court *en banc* adopted the opinion of the Springfield Court of Appeals in the same case.

It is said in Federal Reserve Bank v. Millspaugh, 282 S. W. 706. 708:

"The facts disclose that no reciprocal accounts were kept between these banks, the respondent and the appellant. Where a note, a check, or a draft is forwarded by one bank to another, bearing a restrictive indorsement 'for collection and remittance,' under directions to collect and forward the proceeds to the sender, the relation of principal and agent is created and not that of debtor and creditor. The funds thus collected are held to constitute a trust fund, and entitled to a preference over the claims of general creditors. When the relation existing between two banks, as in the case at bar, is that of principal and agent, the funds collected by the collecting bank for the forwarding bank became impressed with a trust in favor of the owner of the item collected. This is true, although the item collected be one drawn on the collecting bank, and it is collected by charging the item against the drawer's account, or if it be an item payable at the collecting bank and it is collected by a check drawn on it. The trust in either case follows the funds into the hands of the receiver—in this instance the finance commissioner—although the collecting bank may fail before remitting the proceeds collected, provided the following conditions exist: (1) That the item was forwarded for collection and remittance of the collected proceeds; (2) that the drawer of the check had a sufficient balance with the collecting bank to authorize the charging of the item to his account; (3) that at the time the charge was made the collecting bank had sufficient funds available to honor the check; (4) that the bank which failed had at the time the receiver took charge of same sufficient funds on hand to pay the amount it had collected."

The facts of the instant case are found to meet all the requirements enumerated in this quotation and under that decision we must hold the relation of principal and agent was created. It follows, therefore, that although the check in controversy was drawn on the collecting bank and that bank collected it and charged the amount against the drawer's account, the funds of the bank were augmented thereby and the fund so collected constituted a trust fund which was entitled to a preference over the claims of general creditors; and the trust follows the funds into the hands of the commissioner of finance.

Defendant cites the case of Carmichael v. Banking Co., 191 S. W. 1043, as holding contrary to the rule above enunciated. The ruling in that case was to the effect that a valid assignment of all its property made by a bank in Mississippi for the equal benefit of all its creditors, wherever situated, would vest title in the assignee to the personal property of the assignor situated in Missouri, as against creditors seeking to gain preference by attachment; and that under the provisions of section 10097, Revised Statutes 1909, a bill of exchange issued by defendant bank before making an assignment for the benefit of creditors did not operate as a legal or equitable assignment *pro tanto* of the fund. This would seem to be in conformity with the ruling of the same court (St. Louis Court of Appeals) in American Bank v. People's Bank, 255 S. W. 943. But the latter case was overruled by the Supreme Court in Bank v. Millspaugh, supra, which is controlling herein.

For the reasons above stated the trial court erred in holding plaintiff was not entitled to preference in the payment of its claim. Other points are raised by plaintiff which, in view of the above ruling, need not be determined herein. The judgment is reversed and the cause remanded with directions to enter judgment allowing plaintiff preference for its claim. *Bland, J.,* concurs; *Trimble, P. J.,* absent.